THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| **RANGASWAMY MEGANATHAN,** | ) ) ) | **Case No.:** 16-cv-8291 |
| **Plaintiff,** | ) | |
| v. | ) ) | **Hon. Judge:** |
| **NORTHERN ILLINOIS UNIVERSITY,** | ) ) ) ) | **Magistrate Judge:** |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COMES Plaintiff RANGASWAMY MEGANATHAN, ("Mr. Meganathan" or "Plaintiff"), by and through his undersigned counsel of record, and complains against Defendant NORTHERN ILLINOIS UNIVERSITY, ("Defendant" or "NIU"), and in so doing alleges, upon information and belief, except as to allegations particularly pertaining to himself, which are based on personal knowledge, states as follows:

## INTRODUCTION

1. Plaintiff filed this action against Defendant for discrimination on the basis of race and national origin in violation of Section 1981 of the Civil Right Act of 1866, 42 U.S.C. § 1981 *et seq.*, ("Section 1981").

2. Defendant willfully and deliberately subjected Plaintiff to discrimination on the basis of Plaintiff's race and national origin since the date of Plaintiff's hire in 1983, through the present, by keeping Plaintiff's salary substantially lower than similarly situated non-Indian faculty members.

1

**PARTIES**

3. Plaintiff, Mr. Meganathan, is an individual resident of Kane County, Illinois. Mr. Meganathan was employed by Defendant in DeKalb County, Illinois.

4. Defendant, Northern Illinois University, is a public university, located in DeKalb County, Illinois.

**JURISDICTION AND VENUE**

5. The Court has proper jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), and 28 U.S.C. § 1391(c), as Defendant employed Plaintiff in this judicial district, and all or a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

**COMMON ALLEGATIONS**

7. Plaintiff is an Indian male of Indian national origin.

8. Before Plaintiff was hired by Defendant, he worked as a research associate for over 7 years at the University of Pittsburg.

9. Plaintiff was hired by Defendant in 1983, as an assistant professor, at a starting annual salary of $19,800.

10. At the time Plaintiff was hired, Plaintiff had published 13 journal articles, 2 review articles, and 2 book chapters.

11. The next year, in 1984, Virginia Naples (white female) was hired as an assistant professor full time, at an annual salary of $25,200.

12. In comparison, Professor Naples had only one publication at the time she was hired full time by Defendant.

13. Subsequent to Plaintiff hiring, other similarly situated non-Indian faculty members were also hired by Defendant in the Department of Biological Sciences at higher starting salaries.

14. For instance, in 1985, Professor Conway was hired at a starting annual salary of $27,900, and Professor Johns was hired at a starting annual salary of $29,997.

15. In 1987, Professor Hahin was hired as an assistant professor at a starting annual salary of $29,718. On the other hand, Plaintiff's salary in 1987 was only $28,485, despite the fact that Plaintiff had been employed by Defendant for 5 years, and was an Associate Professor at that time.

16. Professor Hubbard was also hired as an assistant professor in 1987, at a starting annual salary higher than Plaintiff's annual salary. Professor Hubbard's starting annual salary in 1987 was $31,968, while Plaintiff's salary in 1987 was only $28,485.

17. Additionally, despite the fact that Plaintiff had been employed by Defendant for 7 years and was an Associate Professor in 1989, Professor Hudsepth was hired in 1989 as an assistant professor at a starting annual salary of $35,100, while Plaintiff's salary in 1989 was only $31,329.

18. Plaintiff was also discriminated against based on his race and national origin with regard to off-cycle salary adjustments.

19. Starting in 2008, Plaintiff made requests to have his salary adjusted, as his compensation was not in-line with non-India faculty members in the Department of Biological Sciences at NIU, and also not in-line with comparable colleagues in the field of microbiology at comparable U.S. universities.

20. Two or three times each semester, Plaintiff would ask his Department Chair, Dr. Carl von Ende, to initiate the paperwork necessary to increase Plaintiff salary.

21. However, for approximately two years, Dr. von Ende did not initiate the necessary paperwork. Each time Plaintiff brought up the matter, Dr. von Ende would state "I will get to it".

22. Eventually, in 2010, Dr. von Ende put in an off-cycle salary adjustment request to Associate Dean, Michael Peddle, on behalf of Plaintiff.

23. In this request Dr. von Ende stated that Plaintiff's initial salary was lower when compared to others hired around the same time, but who had weaker publication records.

24. Dr. von Ende also stated that at the time Plaintiff was promoted to associate professor he only received a 1% increase in his salary due to state budget restrictions.

25. Dr. von Ende acknowledged that in a system where salary raises are awarded as percentages, "such salary disparities cumulatively magnify over the years".

26. Plaintiff's salary adjustment request was ultimately denied by Associate Dean, Michael Peddle.

27. However, similarly situated non-Indian faculty members were granted off-cycle salary adjustments at or around the time Plaintiff's request for a salary adjustment was denied.

28. For instance, in 2008, Professor Bethia King received an off-cycle increase in salary of $12,258.

29. Professor Peter Meserve also received a salary adjustment in 2008, in fact, Professor Meserve received a second salary adjustment in 2009.

30. Plaintiff was also discriminated against on the basis of his race and national origin with regard to his leave in 2006, as part of his Presidential Research Professor award.

31. While on leave, Plaintiff wrote a grant and several publications. Upon returning, Plaintiff discovered that his evaluation score had dropped by one point, which in turn, negatively affected his salary increase.

32. When faculty members take sabbatical leave, their evaluation score from the previous semester is used for the semester during which they were on sabbatical leave, thus resulting in no decrease in their evaluation score.

33. Plaintiff was told that leave under the Presidential Research Professor award did not count as sabbatical leave, which is why Plaintiff's evaluation score was lower upon his return.

34. However, in the past, similarly situated non-Indian faculty members who had received leave under the Presidential Research Professor award were allowed to count the leave as sabbatical leave.

35. Therefore, unlike Plaintiff, non-Indian faculty members received the same evaluation score for the semester they were on leave, as they had received the previous semester, thus resulting in no decrease in their evaluation score upon their return.

36. Here again, Plaintiff's compensation was negatively affected due to the decrease in his evaluation score, while similarly situated non-Indian faculty members' compensation was unaffected when they utilized the same leave.

37. Furthermore, Plaintiff was discriminated against on the basis of his race and national origin with regard to merit scores, and valuing Plaintiff's publication record and other accomplishments.

38. For example, Plaintiff has established a nationally and internationally recognized research program in the field of microbial physiology. He was also elected Fellow of the

American Academy of Microbiology, a distinction that no other professor at NIU has achieved. In addition, Plaintiff has had three federally funded research grants during his career at NIU. Finally, Plaintiff has published research in numerus top journals in the field of microbiology and microbial physiology, while similarly situated non-Indian faculty members have less publications, or publish work in less prestigious journals.

39. Despite Plaintiff's numerous recognitions, awards, and publications in the field of microbiology and microbial physiology, Plaintiff's merit scores did not reflect his recognitions, awards, and publications.

40. Similarly situated non-Indian faculty members, on the other hand, received higher merit scores despite having significantly less publications, or publishing research in less prestigious journals.

41. The impact of Defendant's discrimination against Plaintiff on the basis of Plaintiff's race and national origin can most easily be seen when compared to similarly situated non-Indian faculty member John Mitchell.

42. John Mitchell was hired by Defendant in 1973, and he retired in 2008.

43. At the time John Mitchell retired in 2008, his annual salary was $127,110. At that time, Plaintiff's annual salary was $82,125, or approximately $50,000 less than John Mitchell's annual salary.

44. While it is true that John Mitchell was employed by Defendant longer than Plaintiff, currently Plaintiff has been employed by Defendant for only 2 years less than John Mitchell's tenure at NIU.

45. Nonetheless, Plaintiff's current annual salary is $91,791, or approximately $35,000 less than John Mitchell's final annual salary of $127,110.

46. Furthermore, Plaintiff's annual salary is currently lower than, or substantially similar to, non-India faculty members in the Department of Biological Sciences at NIU, who have significantly less years of employment.

47. For instance, Professor Blackstone was hired by Defendant in 1994, and his current annual salary of $91,733 is substantially similar to Plaintiff's current annually salary of $91,786.

48. Professor Richard King was hired by Defendant in 1996, and his current annual salary of $96,235 is higher than Plaintiff's current annually salary of $91,786.

49. Professor Bethia King was hired by Defendant in 1990, and her current annual salary of $89,145 is substantially similar to Plaintiff's current annually salary of $91,786.

50. Professor Jozef Bujarski was hired by Defendant in 1991 and his current annual salary of $94,821 is higher than Plaintiff's current annually salary of $91,786.

51. Additionally, Plaintiff's annual salary has increased by a total of approximately 9.1%, in the past 4 years.

52. Other similarly situated non-Indian faculty members have received substantial salary increases during this same period of time.

53. For example, Professor Miller's annual salary increased by approximately 19.8% in the past 4 years, and Professor Richard King's annual salary increased by approximately 11.2% in the past 4 years.

54. Plaintiff has been employed by Defendant for over 32 years, during which Plaintiff has won numerous awards and honors, published highly cited research in many of the top journals in the field of microbiology, and brought national and international attention to NIU's Department of Biological Sciences.

55. Despite his long tenure at NIU, and all of the accomplishments he has achieved throughout his career at NIU, Plaintiff was discriminated against with regard to compensation when compared to similarly situated non-Indian faculty members.

56. On or about April 29, 2014, Plaintiff filed an internal complaint with Affirmative Action Investigations, alleging that he had been discriminated against on the basis of race and national origin, and that the discrimination had adversely affected his salary.

57. Plaintiff requested that his salary be adjusted in order to place his salary in-line with similarly situated non-Indian faculty members in the Department of Biological Sciences.

58. In the past, Defendant has routinely made salary adjustments for non-Indian faculty members, when it is determined that the non-Indian faculty member's salary is not in-line with the salary of comparable faculty members.

59. Despite Plaintiff's internal complaint and request that his salary be adjusted, Defendant denied that Plaintiff was entitled to a salary adjustment, and refused to offer Plaintiff a salary adjustment.

60. Plaintiff has suffered lost wages and benefits as a result of Defendant's unlawful discrimination against Plaintiff on the basis of Plaintiff's race and national origin.

61. Defendant knew or should have known that its conduct violated applicable federal laws.

62. All allegations and claims are pled in the alternative to the extent such an interpretation is necessitated by law, required for proper construction under the law and permitted under federal law.

# COUNT I

## RACE AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C § 1981

63. Plaintiff incorporates and realleges all proceeding paragraphs as if fully forth herein.

64. All conditions precedent to Count I have been satisfied.

65. Defendant unlawfully subjected Plaintiff to discrimination on the basis of Plaintiff's race, and national origin in violation of Section 1981.

66. Defendant intentionally discriminated against Plaintiff by treating Plaintiff worse than similarly situated non-Indian faculty members in terms of Plaintiff's evaluations, merit scores, off-cycle salary adjustments, evaluation scores, and recognition of Plaintiff's achievements.

67. The intentional discrimination on the basis of Plaintiff's race and national origin had a substantial negative impact on Plaintiff's compensation, when compared to similarly situated non-Indian faculty members.

68. There was no legitimate, non-discriminatory basis for Defendant's unlawful discrimination based on Plaintiff's race and national origin.

69. Despite Defendant being fully aware of the nature and scope of the racial discrimination, Defendant failed to mitigate, correct, or otherwise address the racial and national origin discrimination.

70. Defendant's actions were knowing, intentional and willful, and in deliberate disregard of, and with reckless indifference to, federal laws.

71. As a result of Defendant's actions, Plaintiff has suffered lost wages and benefits, and other consequential damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

i. Damages sufficient to compensate Plaintiff for lost wages and benefits;

ii. Pre-judgment and post-judgment interest;

iii. Reasonable attorney's fees;

iv. An award of litigation costs and expenses; and

v. Any and all other relief that this Honorable Court may deem just and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: August 23, 2016  Respectfully submitted,

FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC

by /s/ Peter L. Currie

Peter L. Currie (#06281711)
Alexander W. Van Maren (#06321657)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street
Suite #200
Geneva, Illinois 60134
Telephone: (630) 232-7450
Facsimile: (630) 232-7452

*Attorneys for Plaintiff*

## VERIFICATION

I, **RANGASWAMY MEGANATHAN**, being first duly sworn under oath hereby state that I am the Plaintiff in this action, that I have read the forgoing COMPLAINT, and that the allegations contained herein are true and accurate to the best of my knowledge and belief.

Respectfully submitted,

**RANGASWAMY MEGANATHAN**

_____